J. CURTIS EDMONDSON (SBN 236105)
LAW OFFICES OF J. CURTIS EDMONDSON, PLLC
3699 NE JOHN OLSEN AVE
HILLSBORO, OR 97124
PH:(503) 336-3749
FAX: (503) 428-7418
EMAIL: JCEDMONDSON@EDMOLAW.COM
WWW.EDMOLAW.COM

KUMAR MAHESHWARI (SBN 245010)
MAHESH LAW GROUP
7700 IRVINE CENTER DRIVE, SUITE 800
IRVINE, CA 92618
PH: (530) 400-9246
EMAIL: KUMAR@MAHESHLAW.COM
WWW.MAHESHLAW.COM

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARI PRASAD SARDA, an individual<br>Plaintiff,<br><br>        v.<br><br>PIVOTAL SYSTEMS<br>CORPORATION. a Delaware<br>Corporation<br>Defendant. | Case No.:<br><br>COMPLAINT for:<br>1) Breach of Contract;<br>2) Negligent Misrepresentation;<br>3) Fraud;<br>4) Unjust Enrichment<br>5) Violation of California's Blue Sky Laws<br>6) Declaratory Relief<br><br>**DEMAND FOR JURY TRIAL**<br><br>Judge:<br>Trial Date: |

## INTRODUCTION

1.      This case involves the failure of Pivotal Systems Corporation ("Pivotal") to honor a Stock Option Agreement allowing Hari Prasad Sarda ("Sarda") to purchase 1,100,000 of stock at a price at $ 0.25 per share.  Sarda offered to exercise the option, but Pivotal refused, claiming the option had terminated.  This statement by Pivotal was untrue and false. Sarda has been damaged in the amount of $1.65M USD.

## PARTIES

2.      Plaintiff Sarda is an individual and a resident of India.

3.      Defendant Pivotal is a Delaware Corporation conducting business nationally with headquarters in Fremont, Santa Clara County, California. Pivotal is publicly listed on the Australian Stock Exchange (https://www.asx.com.au).

## JURISDICTION, VENUE, and DISTRICT ASSIGNMENT

4.      Sarda brings this complaint under diversity jurisdiction as the amount in controversy exceeds $ 75,000.00 and the parties are from different states.

5.      Venue is proper because a substantial part of the events giving rise to the claims occurred in this district. The Defendant has corporate offices in Santa Clara County, California and is subject to assignment to the San Jose Division.

## FACTUAL BACKGROUND

6.      Sarda is an individual who has expertise with process control systems.

COMPLAINT - 2

7.     Pivotal makes process control systems for the semiconductor industry.

8.     Sarda purchased 119,814 shares of Pivotal common stock on May 2014 when Pivotal was "pre-IPO". (Exhibit 1).

9.     Sarda was then offered a Stock Option Agreement (SOA) (Exhibit 2).  The SOA had the following termination provisions in paragraph 4:

```
    4.  TERMINATION.

    4.1 Termination for Any Reason Except Death, Disability or
Cause. If Participant is Terminated for any reason, except death,
Disability or for Cause, the Option, to the extent (and only to
the extent) that it would have been exercisable by Participant on
the Termination Date, may be exercised by Participant no later
than three (3) months after the Termination Date, but

    4.2  Termination  Because  of  Death  or  Disahility.  If
Participant is
    Terminated because of Participant's death or Disability (or
Participant dies within three (3) months after Termination when
Termination is for any reason other than Participant's Disability
or for Cause), the Option, to the extent that it is exercisable
by Participant on the Termination Date, may be exercised by
Participant (or Participant's legal representative) no later than
twelve (12) months after the Termination Date, but in any event
no later than the Expiration Date. Any exercise beyond (a) three
(3) months after the Termination Date when the Termination is for
any reason other than the Participant's death or disability,
within the meaning of Section22(e)(3) of the Code; or (b)twelve
(12) months after the Termination Date when the termination is
for Participant's disability, within the meaning of Section
22(e)(3) of the Code, will be deemed to be the exercise of an
NQSO.

    4.3 Termination for Cause. If the Participant is terminated
for Cause, Participant's Options shall expire on the Termination
Date, or at such later time and on such conditions as are
determined by the Committee.
```

10.     Sarda was never given notice of Termination nor was subject to the Termination provisions of section 4 of the SOA.

11.     On May 15, 2018, Sarda was given notice by Pivotal regarding the upcoming public offering on the Australian exchange. (Exhibit 3).

12.     On May 16, 2018, Sarda contacted Pivotal inquiring about the status of Sarda's stock and the SOA.

13.     On May 17, 2018, Pivotal confirmed that that the SOA was valid.

14.     On June 22, 2018, Pivotal asked Sarda to sign the original signature pages for all Stock Power and/or Escrow Agreements. (Exhibit 4)

15.     On July 3, 2018, Pivotal went public on the Australian Securities Exchange under the ticker symbol ASX.

16.     On July 31, 2018, Sarda, offered to purchase the 1,100,000 shares pursuant to the Stock Option Agreement.  On July 31, 2018, the closing of ASX was a price of $2.50 per share in Australian Dollars (approx. $ 1.75 per share USD).  On that date, the value of the option agreement was approximately $ 1.65M USD.

17.     On August 23, 2018, Pivotal refused to accept Sarda's offer to purchase the 1,100,000 shares instead claiming the options were subject to the termination clause. (Exhibit 5).

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### BREACH OF CONTRACT

18.     Sarda repeats and realleges each allegation as set forth in paragraphs 1 through 17 above.

19.     Sarda and Pivotal entered into the SOA.

20.     Sarda did all, or substantially all, of the significant things that the contract required him to do, namely offer to tender the option money to purchase the shares.

21.     Pivotal refused to accept his tender of option money to purchase 1,100,000 shares of Pivotal stock.

22.     Sarda has been harmed in the amount of $ 1,650,000 USD representing the difference in price between the option purchase amount and the stock price on the date of the offer.

**SECOND CAUSE OF ACTION**
**NEGLIGENT MISREPRESENTATION**

23.     Sarda repeats and realleges each allegation as set forth in paragraphs 1 through 22 above.

24.     Pivotal made representations to Sarda that the SOA could be exercised at any time.

25.     Sarda accepted these representations to be true and reasonably relied on the representations that the SOA could be exercised at any time.

26.     Pivotal made these representations to induce Sarda to continue to provide contracting services to Pivotal.

27.     Sarda attempted to and was refused the right to exercise his SOA. At the time Sarda could have exercised the SOA, the difference in value between the stock price and the option price multiplied by the number of shares was $1,650,000.00 USD.

**THIRD CAUSE OF ACTION**
**FRAUD**

28.     Sarda repeats and realleges each allegation as set forth in paragraphs 1 through 27 above.

29.     Pivotal made representations to Sarda that the SOA could be exercised pursuant to the Stock Option Agreement provided in 2013.

COMPLAINT - 5

30.     The Stock Option Agreement has an integration clause.

31.     Pivotal knowingly failed to disclose that it was their intent that these Sarda would be denied the options based on a never disclosed terms and conditions as set out in the email by outside counsel for Pivotal after the public offering.

32.     Sarda accepted these representations to be true and reasonably relied on the representations that the SOA could be exercised at any time.

33.     Pivotal made these representations to induce Sarda to continue to provide contracting services to Pivotal.

34.     Sarda attempted to and was refused the right to exercise his SOA. At the time Sarda could have exercised the SOA, the difference in value between the stock price and the option price multiplied by the number of shares is $1,650,000.00 USD.


## FOURTH CAUSE OF ACTION
## UNJUST ENRICHMENT

35.     Sarda repeats and realleges each allegation as set forth in paragraphs 1 through 34 above.

36.     Pivotal required the services of contractors to assist in developing technology for the semiconductor industry.

37.     In exchange for these services, Pivotal would offer stock option agreements to induce contractors to provide their services at a lower cost in exchange for the potential of a greater return in the future.

38.     Sarda was an independent contractor that offered his services to Pivotal for a reduced fee with the understanding that he could purchase shares in Pivotal pursuant to the SOA.

39.     Sarda has provided and will continue to provide the services to Pivotal.

40.     Pivotal never complained or objected to the quality of the Services provided by Sarda.

41.     Pivotal has benefitted from the provisioning of services by Sarda to Pivotal at a below market rate by relying on the representation that the SOA could be exercised at any time.

42.     Pivotal was unjustly enriched in an amount, to be determined at trial, but no less than $ 75,000.00.

### FIFTH CAUSE OF ACTION
### VIOLATION OF CALIFORNIA'S BLUE SKY LAWS

43.     Sarda repeats and realleges each allegation as set forth in paragraphs 1 through 42 above.

44.     Pivotal, who has corporate headquarters in the Santa Clara County, is subject to California's Blue Sky laws (Cal Corp Code §§ 27200 and 27101, et seq.).

45.     Pivotal by engaging in the conduct described above, has employed devices, schemes or artifices to defraud Sarda by means of oral and written communications made untrue statements of material fact or omitted to state material facts necessary to make the statements made in light of the circumstances under which the statements were made, not misleading; and engaged in transactions, practices or courses of business which operated as a fraud or deceit upon Sarda in connection with providing Sarda the SOA.

46.   Sarda has been damaged in an amount to be determined, but no less than of $ 1,650,000.00 USD.

## SIXTH CAUSE OF ACTION
## <u>DECLARATORY RELIEF</u>

47.     Sarda repeats and realleges each allegation as set forth in paragraphs 1 through 46 above.

48.     There is a case and controversy regarding the interpretation of the SOA.   Sarda contends it is had not and has not expired and Pivotal contends that it is expired.

49.     Sarda requests that this Court interpret the SOA and in view of extrinsic evidence determine whether the SOA had expired on the date that Sarda requested to exercise the options and/or has not expired and make a determination of the rights and duties of the parties.

//

//

//

COMPLAINT - 8

## **PRAYER FOR RELIEF**

WHEREFORE, Sarda requests that this Court enter judgment in favor of Sarda and against Pivotal providing the following relief:

(a) Actual damages of at least $ 1,650,000.00 exclusive of costs and interest;

(b) Actual damages as provided for gclaims of unjust enrichment and California's Blue Sky laws;

(c) Punitive Damages according to proof;

(d) An award of prejudgment interest and costs;

(e) An order that the SOA is valid and Pivotal must comply with the terms of the SOA;

(f) Reasonable Attorney fees where provided; and

(g) Such other and further relief as the Court deems appropriate.

Respectfully Submitted,


July 14, 2019                    /s/ J. Curtis Edmondson
                                 Attorney for Plaintiff Sarda

                                 /s/ Kumar Maheshwari
                                 Attorney for Plaintiff Sarda

## **DEMAND FOR JURY TRIAL**

WHEREFORE, Sarda requests that this Court provide for trial by jury.


Respectfully Submitted,


July 14, 2019                    /s/ J. Curtis Edmondson
                                 Attorney for Plaintiff Sarda

                                 /s/ Kumar Maheshwari
                                 Attorney for Plaintiff Sarda

COMPLAINT - 10

**Exhibit 1**
**Sarda's Stock Certificate**



No. C6

BARON CORPORATE SUPPLIES

SEE REVERSE SIDE FOR RESTRICTIVE LEGENDS

# PIVOTAL SYSTEMS CORPORATION

*PA-019*

*NUMBER*

Incorporated Under the
Laws of the State of Delaware
October 28, 2003

*SHARES*

*119,814*

THIS IS TO CERTIFY THAT *HARI PRASAD SARDA* is the registered owner of *One Hundred Nineteen Thousand Eight Hundred Fourteen* Shares of the SERIES A PREFERRED STOCK of

## Pivotal Systems Corporation

A statement containing the rights, preferences, privileges and restrictions of the Corporation's Preferred and Common Stock may be obtained, without charge, at the Corporation's principal office.

transferable only on the books of the Corporation by the holder hereof in person or by Attorney, upon surrender of this Certificate properly endorsed.

IN WITNESS WHEREOF, the said Corporation has caused this certificate to be signed by its duly authorized officers this 7th day of May, 2014.

Joseph R. Monkowski, Secretary

Joseph R. Monkowski, President

EACH

SHARES

PREFERRED



No. C6

BARON CORPORATE SUPPLIES

SEE REVERSE SIDE FOR RESTRICTIVE LEGENDS

**NUMBER** *PA-019*

Incorporated Under the Laws of the State of Delaware October 28, 2003

**SHARES** *119,814*

# PIVOTAL SYSTEMS CORPORATION

THIS IS TO CERTIFY THAT *HARI PRASAD SARDA* is the registered owner of *One Hundred Nineteen Thousand Eight Hundred Fourteen* Shares of the SERIES A PREFERRED STOCK of

## Pivotal Systems Corporation

transferable only on the books of the Corporation by the holder hereof in person or by Attorney, upon surrender of this Certificate properly endorsed.

IN WITNESS WHEREOF, the said Corporation has caused this certificate to be signed by its duly authorized officers this 7th day of May, 2014.

A statement containing the rights, preferences, privileges and restrictions of the Corporation's Preferred and Common Stock may be obtained, without charge, at the Corporation's principal office.

Joseph R. Monkowski, Secretary

Joseph R. Monkowski, President

PREFERRED

EACH

**Exhibit 2**
**Stock Option Agreement**



# PIVOTAL SYSTEMS CORPORATION

## 2012 EQUITY INCENTIVE PLAN

### STOCK OPTION AGREEMENT
(Option Vests)

This Stock Option Agreement (the "*Agreement*") is made and entered into as of the date of grant set forth below (the "*Date of Grant*") by and between Pivotal Systems Corporation, a Delaware corporation (the "*Company*"), and the participant named below (the "*Participant*"). Capitalized terms not defined herein shall have the meaning ascribed to them in the Company's 2012 Equity Incentive Plan (the "*Plan*").

| Participant's Name | Option Shares | Exercise Price Per Share | Date of Grant | First Vesting Date | Expiration Date |
|---|---|---|---|---|---|
| Hari Prasad Sarda | 1,100,000 | $0.25 | April 29, 2013 | N/A | April 28, 2023 |

**Classification of Participant**   [ ] Exempt Employee   OR   [ ] Nonexempt Employee   OR   [ ] Non-employee

**Type of Stock Option:**   [] Incentive Stock Option   OR   [X] Nonqualified Stock Option

**Securities Law Exemptions to Apply:**   Rule 701 and Section 25102(o)

1.    **GRANT OF OPTION.** The Company hereby grants to Participant an option (this "*Option*") to purchase the total number of shares of Class B Common Stock, $0.00001 par value per share, of the Company set forth above as Total Option Shares (the "*Shares*") at the Exercise Price Per Share set forth above (the "*Exercise Price*"), subject to all of the terms and conditions of this Agreement and the Plan. If designated as an Incentive Stock Option above, the Option is intended to qualify as an "incentive stock option" within the meaning of Section 422 of the Code, except that if on the Date of Grant the Participant is not subject to U.S. income tax, then this Option shall be a NQSO. This Option is not transferable.

2.    **EXERCISE PERIOD.** All Shares granted in this Agreement are fully vested as of the Date of Grant ("*Vested Shares*"). The Option shall expire on the Expiration Date set forth above or earlier as provided in Section 4 below in accordance with Section 4.6 of the Plan.

3.    **MANNER OF EXERCISE.** To exercise this Option, Participant (or in the case of exercise after Participant's death or incapacity, Participant's executor, administrator, heir or legatee, as the case may be) must deliver to the Company an executed stock option exercise agreement in the form attached hereto as Exhibit A, or in such other form as may be approved by the Committee from time to time (the "*Exercise Agreement*"). If someone other than Participant exercises the Option, then such person must submit documentation reasonably acceptable to the Company verifying that such person has the legal right to exercise the Option and such person shall be subject to all of the restrictions contained herein as if such person were the Participant. The Option may not be exercised unless such exercise is in compliance with all applicable securities laws, as they are in effect on the date of exercise. The Option may not be exercised as to fewer than one hundred (100) Shares unless it is exercised as to all Shares as to which the Option is then exercisable.

4.    **TERMINATION.**

4.1    **Termination for Any Reason Except Death, Disability or Cause.** If Participant is Terminated for any reason, except death, Disability or for Cause, the Option, to the extent (and only to the extent) that it would have been exercisable by Participant on the Termination Date, may be exercised by Participant no later than three (3) months after the Termination Date, but in any event no later than the Expiration Date.

1

    **4.2**    **Termination Because of Death or Disability.**  If Participant is Terminated because of Participant's death or Disability (or Participant dies within three (3) months after Termination when Termination is for any reason other than Participant's Disability or for Cause), the Option, to the extent that it is exercisable by Participant on the Termination Date, may be exercised by Participant (or Participant's legal representative) no later than twelve (12) months after the Termination Date, but in any event no later than the Expiration Date.  Any exercise beyond (a) three (3) months after the Termination Date when the Termination is for any reason other than the Participant's death or disability, within the meaning of Section 22(e)(3) of the Code; or (b) twelve (12) months after the Termination Date when the termination is for Participant's disability, within the meaning of Section 22(e)(3) of the Code, will be deemed to be the exercise of an NQSO.

    **4.3**    **Termination for Cause.**  If the Participant is terminated for Cause, Participant's Options shall expire on the Termination Date, or at such later time and on such conditions as are determined by the Committee.

    **5.**    **COMPLIANCE WITH LAWS AND REGULATIONS.**  The Plan, this Agreement and the Exercise Agreement are intended to comply with Section 25102(o) and any regulations relating thereto.  Any provision of this Agreement or the Exercise Agreement that is inconsistent with Section 25102(o) or any regulations relating thereto shall, without further act or amendment by the Company or the Board, be reformed to comply therewith.

    **6.**    **ENTIRE AGREEMENT.**  The Plan is incorporated herein by reference.  This Agreement, the Exercise Agreement and the Plan constitute the entire agreement of the parties and supersede all prior undertakings and agreements with respect to the subject matter hereof.

    **7.**    **ACCEPTANCE.**  Participant hereby acknowledges receipt of a copy of the Plan, this Agreement and the Exercise Agreement.  Participant has read and understands the terms and provisions thereof, and accepts the Option subject to all the terms and conditions of therein.  The Exercise Price has been determined by the Committee based upon the best evidence available to the Committee and is intended to equal the Fair Market Value of the Shares as of the date of grant, or in some cases 110% of Fair Market Value, as required by the Code.  However, the tax treatment of this Option is not guaranteed.  Neither the Company, the Committee nor any of their designees shall be liable for any taxes, penalties or other monetary amounts owed by any Participant, employee, beneficiary or other person as a result of the grant, amendment, modification, exercise and/or payment of, or under, any Award, notwithstanding any challenge made to the determination of Fair Market Value by any taxing authority.  By accepting this Option, Participant acknowledges and agrees to the foregoing.  Participant acknowledges that there may be adverse tax consequences upon exercise of the Option or disposition of the Shares and that Participant should consult a tax adviser prior to such exercise or disposition.

    **8.**    **EXECUTION.**  This Agreement and the Exercise Agreement may be entered into in two or more counterparts, each of which shall be deemed an original and all of which shall constitute one and the same agreement.  This Agreement and the Exercise Agreement may be executed and delivered by facsimile and, upon such delivery, the facsimile signature will be deemed to have the same effect as if the original signature had been delivered to the other party.

**[Signature Page Follows]**

24125/00003/DOCS/2746140.1

**IN WITNESS WHEREOF**, the Company has caused this Stock Option Agreement to be executed by its duly authorized representative and Participant has executed this Stock Option Agreement, effective as of the Date of Grant.

**PIVOTAL SYSTEMS CORPORATION**          **PARTICIPANT**

By:  _____          _____
                                         (Signature)

_____          Hari Prasad Sarda
(Please print name and title)          (Please print name)

3

**Exhibit 3**
**Notice of Stock Offering**

Maddocks

---

# Confirmation notice

*Hari Prasad Sarda*

of

*203 Sakar Terraces,*
*2/2 New Palasia*
*Indore, India 452001*

Pivotal Systems Corporation and Pivotal SaleCo hereby confirm in accordance with clause 4.4 of the Sell Down Deed that the final number of your Sell Down Shares which will be acquired by SaleCo and the final numbers of your Shares that will be subject to Mandatory and Voluntary Escrow are as set out below.

| Name of Shareholder | Final number of Sell Down Shares | Number of Shares subject to Mandatory Escrow | Number of Shares subject to Voluntary Escrow |
|---|---|---|---|
| Hari Prasad Sarda | 299,552 Shares | | |

………………………………………………….

John Hoffman
On behalf of Pivotal Systems Corporation and
Pivotal SaleCo Inc

# Exhibit 4
# Email from Pivotal

----- Forwarded Message -----
**From:** Connie Duong <cduong@fenwick.com>
**To:** hpsarda@yahoo.com <hpsarda@yahoo.com>
**Cc:** Lilly Icard <licard@fenwick.com>
**Sent:** Wednesday, June 20, 2018, 9:34:06 AM GMT+5:30
**Subject:** Pivotal - Confirmation Notice and Stock Power (RESPONSE REQUIRED) - Hari Prasad Sarda

Dear Pivotal stockholder,


Attached please see a Confirmation Notice regarding your sell-down election. Also attached is your customized Stock Power, please sign and return it to us as soon as possible, but **no later than midnight PST on Sunday June 24th**.


Sincerely,
Connie


# CONNIE DUONG

Senior Paralegal | Fenwick & West LLP | 650-335-7927 | cduong@fenwick.com


---------------------------------------------
NOTICE:
This email and all attachments are confidential, may be legally privileged, and are intended solely for the individual or entity to whom the email is addressed.  However, mistakes sometimes happen in addressing emails.  If you believe that you are not an intended recipient, please stop reading immediately.  Do not copy, forward, or rely on the contents in any way.  Notify the sender and/or Fenwick & West LLP by telephone at (650) 988-8500 and then delete or destroy any copy of this email and its attachments.  Sender reserves and asserts all rights to confidentiality, including all privileges that may apply.

**Exhibit 5**
**Email from Pivotal's Counsel**

----- Forwarded Message -----
**From:** David Healy <DHealy@fenwick.com>
**To** ████████████████████████████████
████████████████████
**Cc:** osharma@pivotalsys.com <osharma@pivotalsys.com>; Connie Duong
<cduong@fenwick.com>; Lilly Icard <licard@fenwick.com>
**Sent:** Thursday, August 23, 2018, 6:11:15 AM GMT+5:30
**Subject:** Pivotal Option Status

Messrs. ████████ Sarda:

As to the thread below:

Section 2 of the Company option agreement provides that the Option will expire as provided in
Section 4 in accordance with Section 4.6 of the Plan.  Section 4.1 of the option agreement
provides that the option must be exercised no later than 3 months after the date of Termination,
where the Participant (option holder) is terminated (i.e. ceases to provide services) for any reason
other than death, Disability or for Cause.  Section 4.6.1 of the Plan likewise says that in such
case the option must be exercised, if at all, within such 3 month period.

The Plan further provides that Termination occurs when a Participant ceases to provide services
as a consultant to the Company and that the Board has sole discretion to determine whether such
cessation has occurred.  Thus the Board has the sole power to decide the date of termination and
whether you have ceased providing services to the Company.

You actually ceased to provide consulting or other services to Pivotal on July 31, 2017, so your
option actually ceased to become exercisable, and thus the option lapsed per the above terms,
three months from that date, i.e., on October 31, 2017.  While our records were updated after
audit to reflect that your option expired on April 1, 2018 (as Connie noted), in either case there is
no question that your option expired no later than April 1, 2018.

Yes, *outstanding* Pivotal options remained outstanding after the ASX offering, as Lilly noted to
you on May 17, 2018, but  since your unexercised options had already expired (at least by April
1, 2018), they were no longer  outstanding.

Your option was issued under the company's option plan associated with your consulting
services/independent contractor arrangement with Pivotal.  It was not issued in connection with

any financing, and there are no terms in the option (or in any other document) modifying or eliminating the normal option lapsing rules laid out above.

There were warrants issued to investors in the Series A financing but those are unrelated to the option at issue here.

So the company's records properly reflect that your option in question is neither exercisable nor outstanding.

David Healy

## DAVE HEALY

Partner | Fenwick & West LLP | 650-335-7266 | [dhealy@fenwick.com](mailto:dhealy@fenwick.com)

Admitted to practice only in California.